(*) BALDWIN, *in Equity, versus* CITY OF BANGOR.

The proper width of a street must depend upon the amount of travel passing over it, upon the business transacted in it, and upon the comfort of those residing or doing business upon it.

With a view to such uses, the authorities may rightfully locate streets in different parts of the city, varying much in their widths and consequent accommodations.

The Act of 1845, c. 256, relating to the city of Bangor, referring to the legal voters the necessity or expediency of erecting public buildings or making public improvements, which should require an expenditure exceeding three thousand dollars, does not apply to the establishment of public streets.

To obtain a decision whether the proceedings in establishing streets have been legal, the process is by *certiorari*.

Upon a *bill in equity* brought for such purpose and praying injunction, the proceeding will not be examined.

BILL IN EQUITY, heard on bill, answer and proof.

The bill alleged *that* the city council voted to widen Wall, Water and Fore streets in said city, in such manner as to embrace all the land between Mercantile Block and Wall street north of Water street, and also certain other described premises south of Water street; *that*, by a vote of the city council, the streets thus widened were located and established under the designation of " public streets, to be known as Wall street place"; *that* the plaintiff is the owner of certain lots (described) embraced within the limits of said " Wall street place" of the value of $5000, and has a dwellinghouse built on said estate; *that* the streets are not in the line of any public travel, passing to or from the settled parts of the city, or between parts of it where much business is transacted, and, before the widening, were all of sufficient width to accommodate all the travel which was desired, or had occasion to pass over the same, and for all other legal purposes of streets; and *that*, therefore, the public convenience and necessity did not require the enlargment or widening; *that* the whole proceedings of the city council in the premises were undertaken and perfected for a purpose, not warranted by law, and altogether different from that set forth therein, in utter disregard and violation of law and of the rights of the plaintiff; viz., for the purpose of taking land of the plaintiff and others for a public common or promenade, for which the council had no right to take land of any citizen, as they have here undertaken to do; *that* said council and its members, well knowing this, have, in derogation of the plaintiff's right

and in fraud thereof, assumed to take the land under the pretence of widening said streets which happen to lie contiguous to the land desired to be taken; and in furtherance of such illegal design have actually passed the vote aforesaid; *that* all said proceedings were instituted and carried out for a fraudulent purpose; *that* the fraudulent design is attempted to be covered under the appearance of legal proceedings had as aforesaid; *that* an Act, passed March, 22, 1845, provided that it shall be voted upon by the legal voters of the city whether it is necessary or expedient to erect a public building or buildings, or to make such public improvements in said city as towns and cities may lawfully make, when requiring an expenditure exceeding three thousand dollars ; *that* the public promenade or common, created by the doings of the counsel, was a "public improvement" within the meaning of said Act, and the expenses thereof were at least twelve thousand dollars, and no vote of the citizens was taken in favor of it, and the proceedings of the council being in violation of that Act, are void; *that* the city council, by vote passed September 1, 1851, directed the city clerk to give notice to owners of buildings on said premises to remove the same before June 1, 1852, it being for purpose of making same into a public promenade or common, as before alleged ; and *that* the city officers are about to appropriate to the˙ city's use the land taken as aforesaid, and deprive the plaintiff of the same, which doings will be waste and an unlawful interference, &c.

Wherefore the bill prays for injunction and perpetual stay of proceedings on the part of the city in the premises, and for further relief.

The answer filed and signed by the city solicitor, not under oath, *admits* that the city council did vote as alleged, to widen the streets described in plaintiff's bill, and that the streets so widened were established as widened, and called "Wall street place"; *admits* the plaintiff's right of property in land taken as alleged, but, if material, refers to plaintiff's deed for title ; *admits* that the city intends to remove the dwellinghouse˙

Baldwin v. Bangor.

beyond the limits of the streets as widened; *asserts* that the streets are in settled and business parts of the city, where common convenience and necessity need and require other and greater facilities and wider streets than for mere passing and repassing, and that had each of said streets been wider, there would have been much more travel over them, and that some of the streets in the vicinity of, and leading to, said streets are inconveniently crowded with travel and business, and that the widening of said streets is designed in part to relieve, and will relieve in part, the crowded state of the other streets, and that each of said streets as widened is no wider than common convenience and necessity require, and that the travel and business on said streets will be greatly increased by said widening; *denies* that said streets were sufficiently wide for all purposes for which streets can be legally used, and that they are not in the line of travel passing from the settled parts of the city and different portions thereof; *denies* that the said proceedings were for any other and different purposes than those apparent on their face, &c., and that these proceedings are against law and not warranted by law; *denies* that said proceedings were instituted and perfected for the purpose of making a common or promenade, and that the members of the council acted fraudulently, and that they have assumed to take land illegally of plaintiff, or any other citizen; *asserts* that land in the vicinity and contiguous to said streets will be greatly increased in value, and that generally the owners are in favor of the widening and approve of the same, and that the plaintiff, in early steps of the proceedings, was in favor of the same, and urged members to vote in their favor; *admits* the passage of the Act of March 22, 1845; *admits* that the widening will cost more than $3000, and that no vote of the inhabitants was taken; *denies* that this Act was intended to embrace the laying out or widening of streets or such improvements as this, and submits the question to the Court; *asserts* that, by the 6th section of city charter, the city council has power to lay out streets, widen and alter the same, estimate the damages therefor, and that

Baldwin *v.* Bangor.

any person aggrieved may appeal; that the council here allowed damages to plaintiff for his land, the sum of $1541, and the plaintiff appealed, and his appeal is still pending in this Court where he has a plain and adequate remedy for his damages.

The substance of the proof will sufficiently appear in the opinion given by the Court.

*Cutting* and *A. W. Paine,* for plaintiff, contended; —

1. That the city council, in laying out and establishing Wall street place, exceeded their authority, and pointed out what they alleged to be fatal omissions and defects in the proceedings.

2. That the decision of the question as to the legality and effect of those proceedings, could rightfully be had upon a bill in equity, praying for an injunction to stay the action of the city in opening said " Wall street place."

3. That as the amount assessed against the city for the land-damage exceeded three thousand dollars, the location was in violation of the Act of 1845, and was therefore in itself void, and does not require a *certiorari.*

4. That the fraud of the city council, in establishing a public common, under the pretence of merely widening the streets for travel, vacated the whole transaction, and that therefore an injunction ought to be awarded, to stay all further proceedings.

*Wakefield,* City Solicitor, for the defendants.

SHEPLEY, C. J. — The city council have by the city charter exclusive power " to lay out and establish any new street or public way, or to widen or otherwise alter any street or public way in said city." In all other respects the city council are to be subject to the same rules and restrictions as are provided by law regulating the laying out of streets and public highways,

The proper width of a street in a city or town must depend upon the travel passing upon it, the business transacted in it, and the comfort of those residing or doing business upon it.

These may require one street to be of much greater width than another, and the same street to be of much greater width in one place than in another. It cannot be admitted, that the only legitimate purpose of a street is the accommodation of the travel passing and repassing upon it. The great purpose for making streets and ways safe and convenient for travelers, is to enable them to transact their business with more convenience and safety and to enjoy the comforts of social life. The greatest benefit to be derived from a street in a city may be its adaptation for the transaction of business. To overlook in the construction of streets the great purposes to be accomplished thereby, would be neither wise nor in accordance with the design of the laws requiring them to be made. The space required for these purposes may be much greater, where several streets or ways terminate or cross each other. That may be the place, where teams, carts, trucks, drays and other vehicles, are concentrated for the sale and purchase of goods, and for their removal and for standing, while they are being loaded and unloaded. The width of streets and the space required for these purposes can be satisfactorily determined only by those familiar with the travel and business there exhibited, its past history, and its future prospects. A space, which to the eye of a stranger might appear to have been appropriated for a square, or common, or promenade, designed for the preservation of health or the enjoyment of life, might be known to the city council to be necessary for the accommodation of travel and for purposes, for which a greater portion of the travel takes place.

There is, therefore, nothing in the extent of the space made by the combined width of the streets, which would authorize the Court to determine, that the proceedings were commenced and perfected for a disguised and fraudulent purpose. The testimony introduced proves, that certain citizens differed from the city council in opinion respecting the necessity for making those streets so much wider. This is no more than may be anticipated respecting almost every act of the constituted authorities respecting ways, streets and public improvements.

The city council were responsible for their acts, to their constituents, who would not be likely to be unmindful of them, when a charge of fraudulent conduct had been preferred against them. Sufficient time has elapsed to enable them to exert their power to displace them and to enable others to arrest or vacate any proceedings conceived and carried out for deceptive and fraudulent purposes. There is no indication, that their constituents have regarded them as liable justly to such a charge. Under these circumstances, and in the absence of any clear proof of it, the Court cannot be expected to come to such a conclusion.

It is alleged, that the proceedings of the city council were forbidden by the provisions of the Act approved on March 22, 1845. By that Act the Mayor and Aldermen of the city are required to call a meeting of the legal voters and submit to them, whether " it is necessary or expedient to erect a public building or buildings, or to make public improvements in said city, which towns and cities may lawfully erect and make, and which shall require an expenditure exceeding three thousand dollars." The public improvements referred to in that Act, were those of a like character with the erection of public buildings. Such improvements as a city or town may be authorized to make for the transaction of its own business, the support of its schools and its poor, or the safety of its citizens and their property. It cannot be considered as prohibiting the city council from the exercise of a power respecting streets and ways, specially delegated to them, and over which the city can have no direct control ; its exercise being, not for the benefit of the city only, but for the public benefit.

The charge of waste made in the bill is not sustained. That cannot be waste which is authorized by law.

A bill in equity is not the proper process to bring the proceedings of selectmen of towns, city councils or county commissioners, in laying out ways and streets, before this Court to obtain a decision, whether they have been in all respects correct, formal, and in conformity to law. To entertain a bill for such a purpose would make a precedent for the transfer

from this Court, acting as a court of common law, of the purposes entrusted to it as the superintendent of all inferior tribunals, to be exercised by writs of error, certiorari or mandamus, or other proper process, to the equity side of the Court, to be exercised through the channel of a bill in equity.

It is not therefore proper to enter upon such an inquiry in this case. *Bill dismissed with costs for defendants.*

TENNEY, RICE and APPLETON, J. J., concurred.